# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WESTERN PENNSYLVANIA

"JANE DOE", a pseudonym

        Plaintiff,

vs.

ALLEGHENY COLLEGE,

        Defendant.

CASE NO.     20-212

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff "Jane Doe", a pseudonym, files this Complaint against Defendant Allegheny College arising from Allegheny College's negligent and reckless conduct, and alleges as follows:

## I.   INTRODUCTION

1.    This matter arises from Defendant Allegheny College's negligent and reckless undertaking to provide on-campus housing and security services to its students.

2.    Between 2016 and 2018, Allegheny College reported 30 forcible sexual on-campus offenses pursuant to The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act.

3.    On or about December 10, 2019, as a result of Allegheny College's failure to protect Jane Doe from known and obvious on-campus dangers, an assailant

entered Jane Doe's room and raped her at gunpoint.

## II.  THE PARTIES

### A.  PLAINTIFF

4.  Plaintiff, Jane Doe, is an adult citizen and resident of the State of Maryland, who can be contacted through her counsel, David C. Williams, Esquire and Eleanor O. Aldous, Esquire, 1525 Locust Street, the Nineteenth Floor, Philadelphia, Pennsylvania 19102.

5.  Plaintiff's name and address are not contained in this Complaint to protect the privacy and identity of Jane Doe, who incurred injuries and damages due to Defendant's negligence and recklessness.

6.  Jane Doe's use of this pseudonym is done in good faith to avoid humiliation, embarrassment, and additional psychological harm. Plaintiff's identity has been made known to the Defendant by separate communication.

### B.  DEFENDANT

7.  Defendant, Allegheny College, is a nonprofit corporation organized and existing under Pennsylvania law and has its exclusive principal place of business in the Commonwealth of Pennsylvania located at 520 N. Main Street, Meadville, Pennsylvania 16335.

8.  Defendant Allegheny College is a residential liberal arts college that provides undergraduate education as well as living quarters at their main campus

located at 520 N. Main Street, Meadville, Pennsylvania 16335.

9.     At all relevant times, Defendant Allegheny College provided on-campus housing to students, including Jane Doe, by and through its employees, agents, or servants.

10.    At all relevant times, Defendant Allegheny College undertook to provide security services to students, including Jane Doe, by and through its employees, agents, or servants.

## III.   **JURISDICTION AND VENUE**

11.    Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

12.    For purposes of diversity under 28 U.S.C. § 1332, Defendant is a citizen of the Commonwealth of Pennsylvania and Plaintiff is a citizen of the State of Maryland.

13.    Venue is proper in the District of Western Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant, a Pennsylvania resident, is subject to the Court's personal jurisdiction with respect to the civil action in question.

## IV.   BACKGROUND: ALLEGHENY COLLEGE

### A.   ALLEGHENY COLLEGE HOUSING

14.    At all relevant times, Allegheny College has operated and provided on-campus housing, including residence halls and apartments, for enrolled students.

15.    At all relevant times, in exchange for the payment of tuition and/or fees on behalf of the student, Allegheny College has provided housing for students, including Jane Doe. *See generally*, *Financial Services*, ALLEGHENY COLLEGE, attached hereto as **Exhibit 1**:

## Tuition & Fees

### Tuition 2020 – 2021

| Full-Time Fall & Spring Tuition | Part-Time Fall & Spring Tuition | 2020 Summer Tuition |
|---|---|---|
| **$25,240** per semester | **$2,103** per credit | **$2,032** per credit |

### Basic Fees & Charges 2020 – 2021

| Fee/Charge | Per Semester | Per Year |
|---|---|---|
| Tuition | $25,240 | $50,480 |
| Residence Hall – Double – Other rooms available: | $3,450 | $6,900 |

16.    Allegheny College selects the housing where enrolled students live. *See Housing Assignments, Room Changes, and Timeline*, ALLEGHENY COLLEGE, attached hereto as **Exhibit 2**.

17.     Allegheny College "requires students to live on campus during their undergraduate experience." *See Welcome to Residence Life,* ALLEGHENY COLLEGE, attached hereto as **Exhibit 3**; *see id.* ("The Office of Residence Life maintains the roster of student assignments living in College housing. For communication, safety **and billing purposes**, it is important that these be accurate and that students move only with the knowledge **and permission** of Residence Life.") (emphasis added).

18.     Allegheny College issues student identification cards to students, which provides access to Allegheny College residence halls. *See Student Identification Card (Allcard),* ALLEGHENY COLLEGE, attached hereto as **Exhibit 4.**

19.     Upon information and belief, Allegheny College owned the housing where enrolled students live at all relevant times.

### B.     ALLEGHENY COLLEGE DEPARTMENT OF PUBLIC SAFETY

20.     The Allegheny College Department of Public Safety (or "Public Safety Department"; also referred to as the "Office of Public Safety") is a wholly-owned department or agency within Allegheny College.

21.     The employees of the Public Safety Department are employees of Allegheny College.

22.     At all relevant times, the Public Safety Department represented that it supports Allegheny College's academic mission "by providing a secure and safe environment for the entire campus community." *Public Safety,* ALLEGHENY

5

COLLEGE, attached hereto as **Exhibit 5**.

23.      At all relevant times, Allegheny College represented that it undertook programming efforts aimed at "providing periodic educational programs to promote awareness and to discuss issues associated with sexual assault and harassment." *2019 Annual Security and Fire Report*, ALLEGHENY COLLEGE, attached hereto as **Exhibit 6**.

24.      At all relevant times, Allegheny College represented that it undertook programming efforts aimed at "Issuing Crime Alerts and Crime Notifications regarding actual occurrences of crimes as appropriate **(timely warnings)**." *See* **Exhibit 6** at p. 7. (emphasis added).

25.      At all relevant times, Allegheny College represented that it is a "safe and secure community" that is "protected by a competent and committed staff that represents the core of the Department of Public Safety's professional law enforcement, safety, and security team." *Id.* at p. 7.

26.      At all relevant times, the Public Safety Department represented that it "works 24 hours a day patrolling the campus and adjacent streets and manages the emergency communications center, parking, safety programs, and numerous other duties." *Id.* at p. 7.

27.      At all relevant times, the Public Safety Department represented that it employs officers "certified by the State of Pennsylvania ACT 120 program and have

the same police authority as City of Meadville Police on the campus and within 1/4 mile of the campus." *Id.* at p. 7.

28. At all relevant times, the Public Safety Department represented that it focuses "the majority" of its activities on "crime prevention." *Id.* at p. 7.

29. At all relevant times, Allegheny College represented that it installed "emergency call boxes" at "strategic locations" around campus in order "to help provide the safest campus environment possible." *Id.* at p. 14.

30. At all relevant times, the Public Safety Department represented that it maintains "a Daily Crime and Fire Log that records, using the reported date, all crimes that occur on campus, in a non-campus building or property." *Id.* at p. 14.

31. At all relevant times, Allegheny College represented that it "controlled" access to facilities "through the use of locks, proximity access cards, and pin pad entry systems." *Id.* at p. 15.

32. At all relevant times, Allegheny College controlled and undertook to maintain "[a]ccess to residence halls" for "24 hours a day, seven days a week, through the use of proximity access cards." *Id.* at p. 15.

33. At all relevant times, Allegheny College represented that it encouraged members of the Allegheny College community to report certain conduct, including sexual violence, in order to take "steps to end such an environment" and to "respond promptly." *Id.* at p. 31.

34.    At all relevant times, Allegheny College represented that it provided "law enforcement, safety, and security services within the College's jurisdiction." *See* **Exhibit 5**.

35.    At all relevant times, Allegheny College's "Public Safety Goals" provided, in part, "[t]o ensure the personal safety of all College constituencies and protection of all College facilities and equipment." *Id.*

### C.    ALLEGHENY COLLEGE'S ANNUAL SECURITY REPORT, DAILY CRIME LOGS, AND PRIOR NOTICE OF FORCIBLE SEXUAL OFFENSES

36.    Pursuant to The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. §§ 1092 *et seq.* (the "Clery Act"), colleges and universities that receive federal funding, including Allegheny College, must disseminate a public Annual Security Report to employees and students October 1st of every year, to include statistics of campus crime for the preceding three (3) calendar years and details about efforts taken to improve campus safety.

37.    For the year 2016, Allegheny College's Annual Security Report reported 11 on-campus, forcible sex offenses. **Exhibit 6** at p. 26-27.

38.    For the year 2017, Allegheny College's Annual Security Report reported nine (9) on-campus, forcible sex offenses. *Id.* at p. 26-27.

39.    For the year 2018, Allegheny College's Annual Security Report reported 10 on-campus, forcible sex offenses. *Id.* at pp. 26-27.

40.    The Clery Act also mandates that Allegheny College maintain a "daily

8

crime log" that includes crimes that have occurred in the last 60 days.

41.     For the year 2018, Allegheny College's "Daily Crime and Fire Log" reported 24 on-campus, forcible sex offenses. *Allegheny College Daily Crime and Fire Log*.

42.     For the year 2019, Allegheny College's Daily Crime and Fire Log reported nine (9) on-campus, forcible sex offenses. *Id.*[1]

43.     From 2016 to 2019, Allegheny College's Daily Crime and Fire Log reported multiple forcible sex offenses at Ravine-Narvik Hall. *Id.*

44.     From 2016 to 2019, Allegheny College's Daily Crime and Fire Logs reported multiple suspicious person(s) and/or trespasses on-campus. *Id.*

## V.     <u>MATERIAL FACTS</u>

45.     Plaintiff incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

### A.     <u>JANE DOE</u>

46.     Jane Doe matriculated at Defendant Allegheny College in August of 2018, as a scholarship student in pursuit of a four-year college degree.

47.     At all relevant times, Jane Doe was an enrolled student at Allegheny College.

---

[1] At the time of this filing, Allegheny's Annual Security Report had not published statistics for the year 2019.

9

## B.   RAVINE-NARVIK HALL

48.    At all relevant times, Jane Doe was assigned a room in Ravine-Narvik Hall, an on-campus residence hall operated, owned, and controlled by Defendant Allegheny College.

49.    At all relevant times, Ravine-Narvik Hall had approximately nine (9) exterior entrances (or "doors").

50.    At all relevant times, the exterior entrances to Ravine-Narvik Hall were accessible through proximity access cards and/or student identification cards (or "card entry systems").

51.    At all relevant times, the card entry systems for the exterior entrances to Ravine-Narvik Hall regularly failed to operate or function, causing students to prop open or otherwise hold open the exterior doors for access to Ravine-Narvik Hall.

52.    At all relevant times, Ravine-Narvik Hall had no exterior video cameras on its façade.

53.    At all relevant times, Allegheny College had no one assigned to verify the identification of visitors to or residents of Ravine-Narvik Hall.

54.    At all relevant times, Ravine-Narvik Hall had no internal video cameras within its interior.

55.    At all relevant times, Ravine-Narvik Hall had no security personnel

stationed or otherwise posted within the building.

### C. DECEMBER 10, 2019 ASSAULT OF JANE DOE IN HER DORM ROOM

56.     On or about December 10, 2019, Jane Doe returned to her dorm room located on the third floor of Ravine-Narvik Hall, an on-campus residence hall.

57.     Jane Doe went to bed, alone in her room.

58.     At some time thereafter, Jane Doe heard a knock at her door.

59.     Jane Doe went to the door.

60.     Jane Doe's door had no peephole, peek hole, spyhole, door hole, door viewer or other mechanism to allow the room occupant to observe who was on the other side of the door.

61.     As a result of unsecured entrances to Ravine-Narvik Hall and Jane Doe's inability to identify the individual on the other side of the door, an assailant entered Jane Doe's room with a firearm and proceeded to forcibly penetrate her at gunpoint.

62.     At no time did Jane Doe consent to sexual intercourse with the assailant.

## VI.     DEFENDANT'S WRONGFUL CONDUCT

63.     At all relevant times, Allegheny College had undertaken to protect its enrolled students living in on-campus housing, including Jane Doe.

64.     At all relevant times, Allegheny College had undertaken to provide safe housing to its enrolled students, including Jane Doe.

11

65. At all relevant times, Allegheny College had undertaken to provide secure housing to its enrolled students, including Jane Doe.

66. Allegheny College was aware of on-campus forcible sex offenses, and suspicious persons and trespassers on-campus prior to Jane Doe's forcible rape.

67. Despite its awareness of on-campus forcible sex offenses, and suspicious persons and trespassers on-campus prior to December 10, 2019, Allegheny College made no changes to its security procedures to protect students living in on-campus housing, including Jane Doe.

68. Allegheny College was aware, or should have been aware, that entrances to Allegheny College residence halls, including Ravine-Narvik Hall, were not secure.

69. Allegheny College failed to fix, repair, or otherwise address the unsecured entrances to Allegheny College residence halls, including Ravine-Narvik Hall.

70. Allegheny College was aware, or should have been aware, that entrances to Allegheny College residence halls, including Ravine-Narvik Hall, were unable to fully close.

71. Allegheny College failed to fix, repair, or otherwise address the inability of the entrances to Allegheny College residence halls, including Ravine-Narvik Hall, to fully close.

72.     Allegheny College was aware, or should have been aware, that entrances to Allegheny College residence halls, including Ravine-Narvik Hall, had broken, malfunctioning, or otherwise faulty locks, latches, card entry systems and/or doors.

73.     Allegheny College failed to fix, repair, or otherwise respond to the broken, malfunctioning, or otherwise faulty locks, latches, card entry systems and/or doors at entrances to residence halls, including Ravine-Narvik Hall.

74.     Allegheny College was aware, or should have been aware, that the card entry systems to Allegheny College residence hall entrances regularly malfunctioned, including the card entry systems to entrances for Ravine-Narvik Hall.

75.     Allegheny College failed to timely address, fix, repair or otherwise respond to malfunctioning card entry systems to Allegheny College residence halls, including Ravine-Narvik Hall.

76.     Allegheny College was aware, or should have been aware, that its students opened, propped open, or otherwise held open doors to residence halls, including Ravine-Narvik Hall, for extended periods of time.

77.     Allegheny College failed to timely address or otherwise ensure the doors to residence halls, including Ravine-Narvik Hall, remained secure despite knowing its students opened, propped open or otherwise held said doors open for

13

extended periods of time.

78.     Allegheny College was aware, or should have been aware, that doors to students' rooms in Allegheny College residence halls, including Ravine-Narvik Hall, were not secure because they lacked peepholes, peek holes, spyholes, door holes, door viewers or other mechanisms.

79.     Allegheny College failed to address, fix, repair, install, or otherwise ensure doors to students' rooms in Allegheny College residence halls, including Ravine-Narvik Hall, were secure with appropriate mechanisms including, but not limited to, peepholes, peek holes, spyholes, door holes, door viewers or other mechanisms.

80.     Upon information and belief, Allegheny College did not install and/or failed to install additional lighting at or near residence halls, including Ravine-Narvik Hall.

81.     Upon information and belief, Allegheny College failed to have security personnel patrol near or within residence halls, including Ravine-Narvik Hall.

82.     Upon information and belief, Allegheny College failed to train the Allegheny College Department of Public Safety on measures to prevent sexual assault and/or related crimes on-campus and in residence halls, including Ravine-Narvik Hall.

83.     The negligence and recklessness of Allegheny College directly and

proximately caused Jane Doe to suffer the following injuries:

    a.  rape;

    b.  pain and suffering;

    c.  fear and fright;

    d.  embarrassment and humiliation;

    e.  loss of life's pleasures;

    f.  mental anguish and distress;

    g.  trauma; and

    h.  all past and future noneconomic damages recoverable under Pennsylvania law.

## COUNT I - NEGLIGENCE
### Plaintiff v. Allegheny College

84.    Plaintiff incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

85.    The negligence and recklessness of Allegheny College, for the conduct of its actual or apparent agents, servants, and/or employees, consists of one or more of the following:

    a.  failure to train its agents to assess the risks on-campus prior to and during the year 2019;

    b.  failure to inspect the premises selected to house students on-campus, including Ravine-Narvik Hall;

    c.  failure to fix, repair, or maintain the exterior doors to on-campus residence halls, including Ravine-Narvik Hall;

15

d.  failure to secure the exterior doors to on-campus residence halls, including Ravine-Narvik Hall;

e.  failure to monitor the exterior doors to on-campus residence halls, including Ravine-Narvik Hall;

f.  failure to equip the exterior doors to on-campus residence halls, including Ravine-Narvik Hall, with an automatic closing mechanism;

g.  failure to equip the exterior doors to on-campus residence halls with an automatic locking mechanism, including Ravine-Narvik Hall;

h.  failure to equip the exterior doors to on-campus residence halls, including Ravine-Narvik Hall, with an alarm;

i.  failure to secure doors to students' rooms in on-campus residence halls, including Ravine-Narvik Hall;

j.  failure to equip all on-campus residence halls, including Ravine-Narvik Hall, with adequate security mechanisms for entering and exiting the buildings;

k.  failure to provide peepholes, peek holes, spyholes, door holes, door viewers or other mechanisms on the doors to students' rooms in on-campus residence halls, including Ravine-Narvik Hall;

l.  failure to provide adequate security measures, including lighting and/or surveillance, near or at on-campus residence halls, including Ravine-Narvik Hall;

m.  failure to develop, implement, and enforce policies and procedures for the maintenance of adequate, safe, and secure housing for on-campus residents, including Jane Doe;

n.  failure to select adequate, secure, and safe housing for students required to live in on-campus residence halls, including Jane Doe;

16

o.   failure to provide adequate, secure, and safe housing for students required to live in on-campus residence halls, including Jane Doe;

p.   failure to police, patrol, guard, deter or otherwise provide adequate protections for on-campus residence halls, including Ravine-Narvik Hall, and the students required to live therein;

q.   failure to properly supervise, train, hire, and/or retain adequate security personnel to patrol and/or monitor the campus, including areas at or near residence halls, including Ravine-Narvik Hall;

r.   failure to hire and/or maintain a sufficient number of security guards in visible areas to deter crime and protect students;

s.   failure to supervise, hire, manage, train and staff on-campus residence halls, including Ravine-Narvik Hall, with appropriate property management personnel;

t.   failure to have any procedures governing the inspection, supervision, and/or security of on-campus residence halls, including Ravine-Narvik Hall;

u.   failure to have adequate procedures governing the inspection, supervision, and/or security of on-campus residence halls, including Ravine-Narvik Hall; and

v.   inadequately and improperly undertaking to provide on-campus housing and security services to students, including Jane Doe, under the circumstances.

### COUNT II – PREMISES LIABILTY
### Plaintiff v. Allegheny College

86.   Plaintiff incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

87.   In addition to the derivative and vicarious liability of Allegheny

17

College for the negligent acts and omissions of its employees, servants, and agents, Allegheny College further owed a direct and non-delegable duty to Jane Doe as a guest and invitee on premises it owned and provided for on-campus student housing.

88. Allegheny College further owed a direct and non-delegable duty to Jane Doe as a guest and invitee in on-campus housing selected by Allegheny College to house Jane Doe.

89. During all relevant times, Allegheny College was in exclusive possession and control of on-campus student housing, including Ravine-Narvik Hall.

90. Plaintiff was at all relevant times a guest and invitee in on-campus housing owned by Allegheny College.

91. Plaintiff was at all relevant times a guest and invitee in on-campus housing selected and provided by Allegheny College.

92. Allegheny College failed to take reasonable measures to protect Jane Doe against dangers it knew or should have known existed at the on-campus housing selected to house students.

93. Allegheny College failed to take reasonable measures to protect Jane Doe against dangers it knew or should have known existed at the time it owned the on-campus housing.

94. The negligence and recklessness of Allegheny College, acting by and

through its authorized agents, representatives, and employees, consists of the

following:

    a.  failure to train its agents to assess the risks on-campus prior to and during the year 2019;

    b.  failure to inspect the premises selected to house students on-campus, including Ravine-Narvik Hall;

    c.  failure to fix, repair, or maintain the exterior doors to on-campus residence halls, including Ravine-Narvik Hall;

    d.  failure to secure and monitor the exterior doors to on-campus residence halls, including Ravine-Narvik Hall;

    e.  failure to equip the exterior doors to on-campus residence halls, including Ravine-Narvik Hall, with an automatic closing mechanism;

    f.  failure to equip the exterior doors to on-campus residence halls, including Ravine-Narvik Hall, with an automatic locking mechanism;

    g.  failure to equip the exterior doors to on-campus residence halls, including Ravine-Narvik Hall, with an alarm;

    h.  failure to secure doors to students' rooms in on-campus residence halls, including Ravine-Narvik Hall;

    i.  failure to equip all on-campus residence halls, including Ravine-Narvik Hall, with security mechanisms for entering and exiting the buildings;

    j.  failure to provide peepholes, peek holes, spyholes, door holes, door viewers or other mechanisms on the doors to students' rooms in on-campus residence halls;

    k.  failure to provide adequate security measures, including lighting and/or surveillance, near or at on-

campus residence halls, including Ravine-Narvik Hall;

l.  failure to develop, implement, and enforce policies and procedures for the maintenance of adequate, safe, and secure housing for on-campus residents, including Jane Doe;

m. failure to select adequate, secure, and safe housing for students required to live in on-campus residence halls, including Jane Doe;

n.  failure to provide adequate, secure, and safe housing for students required to live in on-campus residence halls, including Jane Doe;

o.  failure to police, patrol, guard, deter or otherwise provide adequate protections for on-campus residence halls and the students required to live therein;

p.  failure to properly supervise, train, hire, and/or retain adequate security personnel to patrol and/or monitor the campus, including areas at or near residence halls, including Ravine-Narvik Hall;

q.  failure to maintain a sufficient number of security guards in visible areas to deter crime and protect students;

r.  failure to supervise, hire, manage, train and staff on-campus residence halls, including Ravine-Narvik Hall, with appropriate property management personnel;

s.  failure to have any procedures governing the inspection, supervision, and/or security of on-campus residence halls, including Ravine-Narvik Hall; and

t.  failure to warn Jane Doe of the lack of security and/or inadequate security at Ravine-Narvik Hall.

## **CLAIM FOR RELIEF**

As a direct and proximate result of Defendant's negligence and recklessness as set forth herein, Jane Doe was caused to suffer the injuries as described above.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages against Defendant Allegheny College upon the claims and causes of action stated above, in excess of $75,000, exclusive of interest and costs, for the amount of Plaintiff's damages to be determined at trial, and for all other and further relief as the Court may deem just and equitable.

Dated this 24th day of July 2020

Respectfully submitted,

**KLINE & SPECTER, P.C.**

BY: *Thomas R. Kline*

THOMAS R. KLINE, ESQUIRE
Tom.Kline@klinespecter.com
Identification No: PA 28895
DAVID C. WILLIAMS, ESQUIRE
David.Williams@klinespecter.com
Identification No: PA 308745
ELEANOR O. ALDOUS, ESQUIRE
Eleanor.Aldous@klinespecter.com
Identification No: PA 327706
1525 Locust Street, Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000 (tel.)
(215) 772-2472 (fax)
*Attorneys for Plaintiff*