IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, ) | | |
|     Plaintiff ) | C.A. No. 20-212 Erie | |
| ) | | |
| v. ) | | |
| ) | District Judge Susan Paradise Baxter | |
| ALLEGHENY COLLEGE, ) | | |
|     Defendant. ) | | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

    **A.   Relevant Procedural History**

Plaintiff brings this personal injury action against Defendant Allegheny College ("Allegheny"), alleging claims of negligence and premises liability arising from the sexual assault of Plaintiff in her dorm room on Allegheny's campus on December 10, 2019. As relief for her claims, Plaintiff seeks compensatory and punitive damages. Allegheny has filed a motion to dismiss Plaintiff's complaint [ECF No. 9], arguing that Plaintiff has failed to establish either that Allegheny had a duty to protect Plaintiff from the spontaneous criminal act of a third party or that its alleged breach of any such duty caused Plaintiff's assault to occur. Plaintiff has filed a brief in opposition [ECF No. 19] and Allegheny has filed a reply brief [ECF No. 21]. This matter is now ripe for consideration.

    **B.   Relevant Factual History**

At all relevant times, Plaintiff was a student enrolled at Allegheny and was assigned a room in Ravine-Narvik Hall, an on-campus residence hall that Plaintiff has alleged is operated, owned, and controlled by Allegheny (ECF No. 1, at ¶¶ 47-48). All nine entrances to the

1

residence hall were accessible through card entry systems activated by proximity access cards and/or student identification cards; however, Plaintiff alleges that the card entry systems regularly failed to function properly, causing students to prop or hold open the exterior doors to allow access to the resident hall (Id. at ¶¶ 49-51). Plaintiff alleges further that the residence hall had no exterior or internal video cameras, had no one assigned to verify the identification of visitors, and had no security personnel posted within the building (Id. at ¶¶ 52-55).

Plaintiff alleges that in the early morning hours of December 10, 2019, while she was in bed alone in her room, she heard a knock at her door (Id. at ¶¶ 56-58). Plaintiff went to the door, which "had no peephole, peek hole, spyhole, door hole, door viewer or other mechanism to allow [her] to observe who was on the other side of the door" (Id. at ¶¶ 59-60). Plaintiff the alleges that "As a result of unsecured entrances to Ravine-Narvik Hall and [Plaintiff's] inability to identify the individual on the other side of the door, an assailant entered [Plaintiff's] room with a firearm and proceeded to forcibly penetrate her at gunpoint" (Id. at ¶ 61].

### C.     Discussion

In Count I of her complaint, Plaintiff alleges that Allegheny was vicariously negligent "for the conduct of its actual or apparent agents, servants, and/or employees," in failing to provide safe and secure housing for students in its on-campus residence halls, including Ravine-Narvik Hall, and that such negligence "directly and proximately caused" Plaintiff's sexual assault (Id. at ¶¶ 83, 85). In Count II of her complaint, Plaintiff alleges that Allegheny "owed a direct and non-delegable duty to [Plaintiff] as a guest and invitee on premises it owned and provided for on-campus student housing," which duty it allegedly breached, causing Plaintiff to suffer injuries resulting from the sexual assault in her dorm room.

The parties agree that to successfully maintain her claims, Plaintiff must be able to establish the following elements under well-settled Pennsylvania law: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage that results thereby. Morena v. South Hills Health System, 462 A.2d 680, 684 n.5 (Pa. 1983). Allegheny argues that Plaintiff cannot establish the elements of duty and causation and, therefore, her claims must be dismissed. The Court will, thus, review each of these elements in turn.[1]

### 1. Legally-Recognized Duty

The existence of a legal duty is a question of law to be decided by the Court on a case-by-case basis. Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166 (Pa. 2000); Restatement (Second) of Torts § 328B(b). Here, Plaintiff argues that Allegheny owed her a duty of care based on three independently sufficient bases: (1) Allegheny's undertaking to provide housing and security services; (2) Allegheny's role as landlord to its tenant; and (3) Allegheny's role as a landowner who opens its land to the public (ECF No. 19, at p. 7). These bases will be considered in the order presented.

#### a. Duty to provide housing and security services

Section 323 of the Restatement (Second) of Torts[2] provides:

---

[1] There is no need to address either of the last two elements since Allegheny has not challenged Plaintiff's ability to establish the same.

[2] Section 323 has been adopted as the law in Pennsylvania. See Feld v. Merriam, 485 A.2d 742, 746 (Pa. 1984) (citations omitted).

3

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) His failure to exercise such care increases the risk of harm, or
>
> (b) The harm is suffered because of the other's reliance upon the undertaking.

While acknowledging the foregoing exception to the general rule that a person cannot be held responsible for the criminal acts of a third person, Allegheny correctly observes that Section 323 is "narrow in application" and argues that "a person, such as [Plaintiff], can only expect the reasonable benefits of the security program as provided by Allegheny and the reasonable performance of that program, nothing more." (ECF No. , at p. 9). Thus, Allegheny contends that "in order for [Plaintiff] to establish a duty under Section 323, she must allege that Allegheny voluntarily assumed an applicable duty and negligently performed this duty." (Id.). This is precisely what Plaintiff has alleged.

In particular, Plaintiff alleges that Allegheny "represented that it 'controlled' access to facilities 'through the use of locks, proximity access cards, and pin pad entry systems," and that it "controlled and undertook to maintain '[a]ccess to residence halls' for '24 hours a day, seven days a week, through the use of proximity access cards.'" (ECF No. 1, at ¶¶ 31-32). Plaintiff alleges further that, despite these representations, Allegheny was aware, or should have been aware, that entrances to its residence halls were not secure because (1) the entrances were "unable to fully close" due to "broken, malfunctioning, or otherwise faulty locks, latches, card entry systems and/or doors" (Id. at ¶¶ 68-73), and (2) "the card entry systems to Allegheny

4

residence hall entrances regularly malfunctioned," causing the students to prop open or hold, open the exterior doors "for extended periods of time" (Id. at ¶¶ 74, 76). These allegations are sufficient to establish that Allegheny undertook to render security services to students, like Plaintiff, residing in its residence halls, but failed to exercise reasonable care to do so. Thus, Plaintiff's allegations adequately establish a duty under Section 323.

### b.     Duty of care owed to tenant and/or business invitee

Alternatively, Plaintiff has also alleged that Allegheny owed her a duty of care by virtue of her status as either a tenant, a business invitee, or both. In this regard, Plaintiff argues that Allegheny, as both landlord and landowner, "was on notice of the frequent and recurrent sexual assaults on-campus and in dormitories in the years immediately preceding the assault on [Plaintiff]" (ECF No. 19, at p. 14). Specifically, Plaintiff alleges that Allegheny's public Annual Security Reports disclose that a total of 30 on-campus forcible sex offenses occurred during the years 2016 through 2018, including a total of 24 in Allegheny's residence halls (ECF No. 1, at ¶¶ 37-39). In addition, Plaintiff alleges that Allegheny's "Daily Crime and Fire Log" reported a total of 33 on-campus forcible sex offenses in the years 2018 and 2019, including "multiple forcible sex offenses at Ravine-Narvik Hall" (Id. at ¶¶ 41-43). Based on this information, Plaintiff argues that Allegheny knew or should have known that Plaintiff's sexual assault in her dormitory room was a foreseeable risk for which it owed Plaintiff a duty of care. These allegations are also sufficient to establish the existence of a duty at the motion to dismiss stage.

### 2.     Causation

As noted above, the third element of a cause of action for negligence requires Plaintiff to show that there exists a causal connection between the alleged negligent conduct and the

resulting injury. Although causation is often a question for a jury, the issue of proximate cause, in the first instance, must be resolved by the trial court. See Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281, 1287 (Pa. Super. 2005) (citations omitted) ("Proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury"). "A determination of legal causation essentially regards whether the negligence, if any, was so remote that as a matter of law, the actor cannot be held legally responsible for the harm which subsequently occurred. Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." Lux, 887 A.2d at 1287 (citation omitted).

      Here, Allegheny argues that there are no factual allegations that support the conclusion that Plaintiff's assailant entered her resident hall "through a propped open door, without a key card, or otherwise due to a malfunctioning security system" and, thus, Plaintiff cannot show that Allegheny's alleged negligence was the proximate cause of Plaintiff's injuries. This point is well taken. Nonetheless, despite the tenuous causal connection established by Plaintiff's allegations, the Court is unable to conclude, as a matter of law, that Allegheny's alleged negligence in upholding and maintaining its security services is so remote that Allegheny cannot be held legally responsible for Plaintiff's harm, particularly in view of its knowledge of the foreseeable risk of such harm evidenced by Allegheny's recent history of sexual assaults on its premises and within its residence halls. Plaintiff should be given the opportunity, through discovery, to determine the facts surrounding how the assailant entered her resident hall and the role, if any, that Allegheny's alleged negligence played in facilitating the sexual assault at issue.

### 3. Count I – Vicarious Liability

In addition to the foregoing, Allegheny has separately moved for dismissal of Count I of Plaintiff's complaint, arguing that Plaintiff has failed to allege a cognizable claim of vicarious liability under Pennsylvania law. The crux of this argument is best summarized by Allegheny's statements in its reply brief that Plaintiff "fails to identify a single employee [she] alleges undertook, or failed to undertake, a single action that caused [her] injuries" and "[a]t no point does Plaintiff allege any actions, or inactions, by an agent of Allegheny College." (ECF No. 21, at p. 5). However, Plaintiff is not required to specifically identify the employees and/or agents of Allegheny who were allegedly responsible for the negligent acts or omissions alleged in the complaint. It is enough that Plaintiff has enumerated a number of alleged acts or omissions of Allegheny's "actual or apparent agents, servants, and/or employees" for which Allegheny is alleged to have been vicariously liable. (ECF No., at ¶¶ 63-82; 85(a)-(v)). This is sufficient at the pleading stage.

An appropriate Order follows.